Good morning, Your Honors. May it please the Court. My name is Andy Simpson, and I represent Deputy U.S. Marshal Margarita Serna. The district court committed two procedural errors in reaching the issue of race judicata. It considered an issue that was first raised on in a surreply after oral argument, and then it took judicial notice of the issue without giving Marshal Serna an opportunity to respond to it. Then on the settlement agreement issue, the Court erred. Well, first of all, the Court erred in applying race judicata as well, and we believe this Court's decision in Keith governs that issue. Then with respect to the settlement agreement, the Court erred by, or excuse me, that's where it misapplied Keith in holding that race judicata applied when the issues in the earlier case were completely different from the issues that were raised in the current case. And we believe that the Court's decision in Daveney also applies there to hold, that race judicata does not apply when there's a dispute about the issues that were raised in the first case. To get to the first issue that I've mentioned, the raising the issue in the surreply, I think it's hornbook law that is inappropriate to grant a motion based upon an issue that's first raised in a surreply. With respect to judicial notice and taking judicial notice and giving Marshal Serna an opportunity to reply to that, the government says, well, you should have filed something with district court. As we've pointed out in our briefs, there's no opportunity to do that when the issue of judicial notice comes up in the opinion entering in the final judgment. Would it be correct, Mr. Simpson, to conclude that you've had, assuming you're right about that, for the sake of discussion, have you not had a full opportunity in the way of this appeal to respond fully to what you identify as the procedural irregularity of the manner in which the district court proceeded? Well, certainly we have done our best. Is there anything that's not before us that would have been before the district court had you been afforded an opportunity to present something to the district court? No, Your Honor. It would be before the court in an evidentiary fashion rather than a proffer. Because we have proffered what we would have brought to the court. Okay. So everything is before this panel that would have been before the panel had the district court done everything it did except that it had given you an opportunity. That's correct, Your Honor. And we believe the court was wrong in deciding the race judicata issue on the merits. But, again, I don't want to tie up your time, but you don't suggest that we should reverse, find reversible error on that basis. On the basis of? On the basis that the district court didn't give you an opportunity to present what you would have presented had it given you the opportunity since you presented all of that to us. I have no objection to reaching the merits of the decision here if the court wishes to do that, yes. And on the merits, I think the race judicata issue was incorrectly decided. The evidence was that in the first case, the first case arose out of discreet acts that were happening in the division that Deputy Marshal Cerno was assigned to. And it involved actions taken against her that she alleged were due to discrimination by her first level supervisor and her second level supervisor. And she alleged, they're doing these things to me because of my gender and my ethnicity. It seemed to me in resolving this case that Judge Lee rested primarily or significantly on the extraordinary breadth of your first complaint. He didn't even need, he could have gone farther and indicated that not only what you did raise but what you could have raised for race judicata purposes. But the district court talked about the breadth of that first complaint, which were 20-plus actions, he says, that you were complaining of. And then there's a phrase in the first complaint, without limitation, and you complain about lost promotions, future lost promotions, threats, demotions, unfair scrutiny. The first complaint goes on and on and on and on. I think the district court was correct to say that it had a great deal of breadth. Why wouldn't it, why wouldn't preclusive effect attach to that initial disposition? Your Honor, I would submit that the first complaint is, or the amended complaint in the first case, is very detailed. And it is very detailed about the actions that occurred to Deputy Marshal Serna in that particular division where she was assigned. But in particular, as we outlined in our reply brief, with respect to promotions, there is no allegation after 2006 relating to a promotion, a retaliation in promotion. There could have been, but there not, because the date of the first amended complaint was August 27, 2010. So you could have raised questions about after 2006 to 2010. Well, part of the problem comes, Your Honor, with when someone realizes that My question is, you know, the second lawsuit says, well, 2008 to 2010 is the operative period, and then the date of the first amended complaint was well into 2010, August 27. So you're describing as the operative period something that was prior, you're describing in the second lawsuit the operative period as something that was, events that were prior to the date of the first amended complaint. And I don't understand why the district judge was wrong, given that the suit went, the earlier suit went to final judgment, and it had the same two parties involved, and it had the same employer involved, and as I've, we've just been over the same time period, the claims have much the same nature, they deal with employment discrimination. I'm just not sure why the district court committed reversible error given these circumstances. Okay. One of the problems is when you discover the discrimination, or in this case retaliation in the second lawsuit. Yes, it covers promotions between 2008 and 2010, but Deputy Marshal Cerna applies for a promotion and doesn't get a promotion. Can't just go down and say, well, that's because of retaliation. It doesn't have evidence, she doesn't have the evidence of retaliation. What finally triggered it was the sheer number of attempts she made, and she kept, she had an unblemished career, and was not having a problem getting promotions up until she filed an EEO complaint. And then she doesn't get a promotion. Okay, well, I'll just reapply in the next round of promotion opportunities. And it happens again. So it took a while, and it's not that they happen 30, one after another, they're groups. You apply every... What about precedent in Keith v. Aldridge? Is it the existence of the claim, not party awareness of it? Well, it's when the claim accrues, Your Honor, and the claim doesn't accrue until you have knowledge of it and are able to assert it. She couldn't assert it until she developed the information, obtaining the information via the Freedom of Information Act. And that's typically how the EEOC deals with these cases. When you have an issue, they look at the date you filed the Freedom of Information Act request when the employee brings an action more than 90 days after the period when they're supposed to initiate an informal proceeding. They say, well, you can't know these things at this point, and we base it upon when you applied for your Freedom of Information Act request. That information isn't in the record because of the way this case came up. Well, you're not supposed to include counts in a complaint that are frivolous, but, of course, people include counts in a complaint all the time that full information doesn't exist with respect to them, and that's what the whole purpose of a lawsuit is, is to develop that through discovery and elsewhere. And you don't generally... But you don't have to know everything about it. That's part of what the litigating process is designed to uncover. Yes, Your Honor, but you can't penalize people for adhering to Rule 11, I don't believe, either. And, as I say, the way the EEOC deals with this exact issue in terms of calculating the time period is when the employee filed the Freedom of Information Act request, then there obviously was something making them suspect, and that's when they start the time for filing an EEO claim. And I think that's appropriate. I read that first complaint and I said, my golly, it couldn't be anything more. Well, but that's the... You were very thorough. But it was for a discrete period of time. And, as I point out in the brief as well, one of the issues on res judicata is, is it a convenient unit for trial? And this case, the first case, involved a top-secret part of the U.S. Marshals Service. And everything had to be done under secrecy. All the witnesses relevant to that area were under pseudonyms. And it certainly was not convenient, would not be convenient, to put in 30 other claims spanning all the way over to Hawaii where all these other witnesses are going to be deposed, and it would be very easy then to associate Marshal Serna in those cases and figure out her role in this other case. You'd lose the anonymity of that first proceeding if you tried to combine all these promotion claims into that particular claim. So that's another reason, separate, as to why res judicata isn't appropriate. With respect to the settlement agreement, and that was what the motion to dismiss was about, the Marshals Service said, we have a settlement agreement and this claim is waived because the nature of the second case has changed now because it had been proceeding as a class action with individual claims, but the district court, for its convenience, when it decided not to allow the class action to proceed, separated the five class claimants into separate civil numbers. And it didn't change, the complaint didn't change until he ordered the parties to file an amended complaint, but it was an amended complaint, and there's 120 some docket entries before the date that the administrative, that this new case was administratively created. And the individual claims that she asserted in the class action complaint are in the current complaint. The settlement agreement preserved the right to participate in the class action. It said, nothing in this settlement agreement shall affect your right to participate, not in the class action, in that lawsuit, because that lawsuit is more than a class action. It is a class and individual action. Each of the class claimants was asserting individual claims. The marshal service says, this is evidence that now that it's no longer that case. I'm sorry, please don't lose your thought, but I'm not sure I follow you when you say it was more than a class action because individuals were asserting individual claims. That's true in every class action. Well, that is true, that you're asserting individual claims. And all that happened, so those individual claims were there, and the marshal service knew they were there because the day before they signed the settlement in this agreement, the settlement agreement in this case saying, we agree what you're doing over in that case is not affected by this settlement agreement. The day before, they were filing a motion in that case saying, and it's docket number 20 in the record below, saying it's disingenuous to claim there's no individual claims in that, in this action, in the class action. There are always a potential individual claims in the class action. And the marshal service knew it, and they preserved it. And then the other part of the settlement agreement then says we are only. As an overall matter, you're saying that the first complaint, this very broad complaint dealing with the same parties, basically the same time period, that that meant nothing in terms of its preclusive effect, and that the settlement agreement meant nothing, and that the litigation is just going on and on again. And every now and then, you get a lawsuit which reminds you of the, I don't know whether it was John Dice v. John Dice that said it this way, but the whole idea that men and women are mortal, but lawsuits are immortal. And this one just, you just say, well, the settlement agreement was of no moment. And the first complaint and the disposition that was the final judgment that was made in the first suit is of no moment. And you try to squeeze some little thing that may have survived. Take these things and you squeeze some little thing that we can keep it all going with. But we have to make a practical judgment as to whether you've had your day in court on this time period. You may not like the final judgment, but that's the way it turned out. And you did sign a settlement agreement where it extended explicitly to all claims that could have been filed. And it just seems to me that this thing could sort of dribble out forever, which is the very purpose of race judicata to force it all. May I respond, Your Honor? I'm out of time. Oh, sure, respond. This settlement agreement was intended to preserve the claims that are here. That's why it says in the settlement agreement, this agreement doesn't affect what's going on in the Valerino case. And the Marshal Service knew that CERNA was asserting those claims in that case, and they knew we were not settling those. And so that's the bargain that they bought and we bought. And they didn't claim. They didn't go over to the district court and say, well, you have to dismiss. You have to win on both of these points to prevail, do you not? Yes, I do, Your Honor. But they didn't go over to. Okay, fine. Let me ask my colleagues if they have some further questions. If they do, we'll give you a chance to answer those. Thank you, Your Honor. Thank you, and may it please the Court. Antonia Conkley for the defendant. Your Honors, the doctrine of res judicata exists to ensure that a plaintiff only gets one bite at the apple. That is, one full and fair opportunity to litigate any and all claims that were fairly presented by either the transaction or the series of related transactions that were at issue in the plaintiff's original lawsuit. Here, we have absolutely no dispute that the first two elements of that doctrine are met. Namely, that's the existence of a final judgment on the merits as well as the identity of the parties. The only element of the doctrine that a plaintiff is disputing is the third and final one, whether identity of claims has also been met. We submit that as the district court correctly held, there are two distinct ways in which that element is met here. And to take them chronologically, first, as plaintiff does not and cannot dispute, after a full opportunity for discovery in the first individual lawsuit, the district court judge in that suit granted defendant summary judgment on the vast majority of the claims raised by that suit, including, as particularly relevant here, all of plaintiff's quite broadly alleged retaliation claims in that suit. Now, as the district court observed in that decision, there were two critical observations in reaching this holding. First, that the claims in the first complaint were broadly alleged, and that includes the retaliation claims. And here, I would just like to correct the record on a few points that plaintiff's counsel raised during his argument. In her briefing before this court, she argued that she should be able to – I'm sorry. was never alleged to be retaliatory, and that, therefore, the retaliation events were really confined to 2004 to 2006. I'd just like to point out that if you look at paragraph 23 of the first amended complaint in that lawsuit, there's an allegation that in December 2008, plaintiff alleged that she'd been denied a specific promotion the September 2008 one, and that the basis for that was in part retaliatory. And further, if you go to pages 85 – I'm sorry, 84 and 85 of the appendix, that administrative charge is there, and it quite clearly lays out that that claim was alleged to be retaliatory at that time. So plaintiff's efforts to cabin the retaliation claims to 2004 to 2006 are just frankly belied by the record. I would also point out here that she didn't even take any action to assert her EEO rights until August of 2005. Therefore, it's simply impossible that her retaliation claims would date back to 2004. And as Judge Wilkerson noted, the time period covered by these two suits is essentially the same, and the crucial date is the August 27, 2010 date when she filed her first amended complaint under race judicata. The standard is that that effect applies to any claim that she either did or could have brought in the first lawsuit. So that would include any retaliation claim that she either did or could have brought up until that date. Does it matter for race judicata purposes whether a label put on a particular claim is retaliation versus disparate treatment? Are those simply distinct legal theories underlying the same claim? Yes, and what race judicata says is that if it's the same set of related facts, you can't change your legal theory. Race judicata effect applies to any legal theory you could have brought on the same set of facts. So the question is really are the facts alleged in these complaints sufficiently related? Well, I understand Title VII sets out distinct theories of disparate treatment, disparate impact, retaliation for X, retaliation for Y, disparate treatment on this basis, disparate treatment on some other basis. But for race judicata purposes, I would think that it's all the same claim. Exactly. If they all go back to the same related series of facts, it does not matter that you've got a different legal theory on the second suit. That's irrelevant for race judicata purposes, even though those distinctions may matter in the Title VII context. I'd also like to point out that if you look at what plaintiff is arguing with respect to exhaustion, and not to jump ahead but just to point out a contradiction and a concession that she makes there, she argues that one of the reasons she should be allowed to be excused from exhaustion is that her current retaliation claims should fairly relate back to the administrative complaints that were the basis for her first individual lawsuits, to the 2007 and 2008 administrative complaints that she filed. And the basis for that argument is that her new claims are sufficiently related to the claims that were raised by those complaints and then prosecuted in her first lawsuit that they're fairly before the court now as part of the same series of transactions. So that concession is right there in her brief as well. What do you say about the language in the settlement agreement, the carve-out language? The carve-out language, we think that if you consider the moment in time when that settlement was reached and the fact that we had... Which was what date again? It was July 1st, 2011. 7-11, right. 7-11. And the summary judgment order in that case had been entered a few months before, I believe on May 12th of that year. So in light of summary judgment being granted as to all of her retaliation claims that were raised in that suit, and also, very importantly, if you read it in conjunction with the express provision in that settlement, and I have it here before me, that plaintiff agrees to, quote, withdraw and quit for all time, any and all claims, demands, actions, causes of action, complaints, appeals, or suits that were filed in this case or could have been filed, and then to skip ahead a little bit, quote, arising out of transactions, occurrences, or events which were or could have been alleged or litigated in this case. That language is, I would submit, quite plainly inclusive of any individual retaliation claims. And you didn't draft that? I did not. I was not yet with my office at the time. So was this a situation where the lawyers on both sides sort of put some language in to a settlement agreement and sort of either explicitly or implicitly decided we're going to fight about what's left later? No. No? No. Absolutely not. So you agree that there's language in the settlement agreement that sort of cuts both ways? I agree that if you consider the participation in a class action language as a stand-alone provision, there's a plausible reading there. But if you read it in light of the summary judgment order that was entered at that time as a backdrop and ‑‑ Which was not mentioned in the settlement agreement. No, but both parties were clearly very well aware of it, and it had, you know. That's not how it works in contract law. You know, we don't assume incorporation requires incorporation by reference. You don't have reference, do you? No, there's no incorporation by reference. Right, but you don't. So then getting to Judge Davis' question is, you paid $350,000, right? That was inclusive of attorney's fees, yes. Exactly. And you could have purchased the entire piece, but you didn't. You decided that you were going to pay for almost all of it, but at least something less than 100% by your own agreement. What do you think you were leaving for them to have? We were leaving the class claims, the pattern and practice claims that can only be brought in the vehicle of a class action suit. But you said the class litigation. No, the class action claims within that suit. The pattern and practice claims that were raised by the class suit, those are going to proceed regardless. Excuse me, Counselor. Yes, I'm sorry. Were those the only ones raised? In the class action? In that class action, were those the only claims raised? Yes, there were two pattern and practice claims. No individual claims raised? The answer is yes, there were. There were some alleged, but. That's not correct in the only pattern and practice. There were individual claims alleged. And you decided to label your car violation, Judge Davis, I think that's an apt term for it. You reserved that for them. As I said, class actions almost always involve some individual claims because when it comes to damages, they have to be assessed individually. So you knew, too, that a class action litigation would involve individual claims at some point, if nothing else other than damage calculation, correct? With respect to that damage calculation question, Plaintiff Serna had the courts certify the class and then determine that there was a pattern or practice of discrimination present. At that point, the court could have entered injunctive relief and ordered, for example, retroactive seniority adjustments, which would have entitled the class members to back pay. So Plaintiff Serna, as a class member, who would benefit from that injunctive or prospective relief, could have been entitled to monetary damages, which in the Title VII context back pay claims are considered equitable relief. She could have been entitled to that form of relief, but our position and our understanding from the settlement forward, from the summary judgment order and from the settlement forward, was that her individual claims, which she purported to raise in that suit, those were done. Why were they done? They were done because she agreed in the settlement order that she withdrew any claim that she could have raised in the first suit, and she could have raised those claims in the first suit as well. But there's a conflict, though, with the language of the carve-out. You're telling us that's your intent, but that's sort of parole evidence, isn't it? It's not the language. The language of the agreement is in conflict. Respectfully, Your Honor, we do, again, submit that when you look at the context of the summary judgment order, having read the language that you think most extends explicitly to all claims that could have been filed, an individual claim, that language in the settlement agreement. In the settlement, it's in – do you want the paragraph citation? I just have the excerpt. No, it's read. Plaintiff agrees to withdraw and quit for all time any and all claims, demands, actions, causes of actions, complaints, appeals, or suits that were filed in this case or could have been filed, and then to skip ahead a bit, arising out of transactions, occurrences, or events which were or could have been alleged or litigated in this case. That language squarely – and that it encompasses the individual, any individual claims within the context of the class action, subject only to the exception of participating in the class claim. Exactly, Your Honor. Read the language of the carve-out. The carve-out says that – I believe I can quote it verbatim. That would be helpful, yes. That nothing in this – Do you remember it by heart, as people used to say? I'm fairly confident that I do, will affect her participation in the class action. Nothing. Nothing in there will impact your participation. Nothing. That's pretty universal, too, isn't it? About as broad as you can get. No thing, including the language that precedes, that you said was so universal. Right? Your Honor – Wait, wait, wait, wait. I don't want people to follow that. Isn't that correct? Isn't that pretty broad? Nothing. I'm actually not positive that the word nothing was used. It was something to that effect. I invited you to read it, but you put your head in the air, so I thought you were pulling this from your – Yes, and I apologize. The main language is – But you had the other language. I do have the other language right here in my notes, and I'm sorry. I don't want to take the time to flip through. Respectfully, we think that if you look – You know, you really counsel when you come to prepare to argue your case. That really should be here, because that's really the question. So that should be at your fingertips. I apologize. Respectfully, for the reasons that I've articulated – Let me just tell you, to get back to what you read, nothing – read me the language again that my good colleague had you read. The whole thing from this – The third time you're reading it, right? The language, the broad language? Yes. Read it again. Plaintiff agrees to withdraw and quit for all time. Any and all claims – I understand that. Oh. The class action language. She didn't have that. That's what it was. I'm sorry. I can pull that up quickly if you would like. Page 60. Thank you very much, Your Honor. Thank you, Your Honor. The parties understand that this agreement does not affect the plaintiff's participation as a plaintiff in the action captioned Linda Valerino v. Eric Holder. Has no effect on it. None. Is that correct? That's the language? It says yes. What you're contending is that that limits the – that that language is – it limits where you are – limits the right to participate, confines the right to participation in the class action. And when the class action is no longer a class action, then the right is extinguished. That is – That's what – that's the reading that you're contending for, that it grants the right to participate in a class action, and if the class action ceases to become a class action, then the reservation is extinguished. Is that correct? That's exactly correct, Your Honor. Go ahead. Is there another question? Can I – Well, you told her. Okay. All right, go ahead. I'm sorry. Go ahead. You're the lead judge. Can I follow up on that? Sure. All right. That's the reading for which you argue. And now relate your reading to the text of the settlement agreement. Tell me why you think the text of the settlement agreement supports your reading. It may be a perfectly good argument. I'm not trying to trip you up or anything. I'm just – I want you to say why your reading that we just agreed upon is why the claims are extinguished when the class action ceases to be a class action and class certification is denied. Okay? Just tell me what in the text supports that reading. I am certainly happy to answer that question. I just would like to note that my time is running short and I was also hoping – You can rely on your time. Okay. Go ahead. Thank you, Your Honor. I'm interested in that answer to his question. Judge Gregory may have an additional question as well. Go ahead. Don't worry about the time. We would submit that the reasoning Judge Lee articulated in the decision on appeal here is correct. He noted that the language didn't preserve, quote, plaintiff's right to pursue any and all claims articulated in this class. It said to participate in the class action indicates, you know, an understanding that she would continue as a class plaintiff within the vehicle of that. Where are the textual words that support that? That's your argument, I understand. Just give me the text. That's in the combination of the settlement will not affect her participation in the class action, right in conjunction with the release that I've now read a few times into the record. You have to read them both together. Yes. And you can't just take that latter part and rip it out of context and take it apart from that – separate it apart from that broad language initially, which appears plainly to point to the extinction of individual claims. That's exactly right. That's your argument? You adopt that argument? I believe that's the argument we set forth in our brief. It was very well articulated by Judge Wilkinson. Okay. All right, now I'm going to try to ask a question. Okay. All right. Now, when you file a class action, it's not a class action really until it's certified, correct? That's correct. So that's what it is. It's litigation that a group of people or representatives file, and they're hoping to be certified, correct? Correct. Right. But the litigation is the litigation. And you say it will have no impact on that litigation. So there's life post-rejection of certification in the litigation. Is it correct? That's correct. Well, then, if you wanted it to have the narrower reading that Judge Wilkinson gave you and that you adopt, if you said it was in your brief, then you could have written it that way. You could have said only to the extent that the class is certified, and you can pursue those claims. But you didn't. You said it will have no effect on their participation in the litigation. That's not class. It's not defined until a class has to be certified. Well, once the class is ---- You do agree that individuals can then pursue their individual claims, correct? If they're exhausted and in the vehicle of new suits that are on different dockets that become new lawsuits. Joining the class action tolls their statute of limitations. But once there's no class, there are individual plaintiffs again. Judge Lee gave them permission to file new suits to pursue any claims that they had preserved and still possessed. Plaintiff Serna no longer had any as a result of the summary judgment order and the settlement agreement and the release contained therein. And that's your ---- Fair enough, that's your interpretation. But that's not the letter of the language. Again, I don't know what I can say. I'm not sure. Read it again. Page 60. The parties understand that this agreement does not affect the plaintiff's participation as a plaintiff in the action, captioned Linda Valerino versus Eric Holder. It doesn't even say class action, does it? Respectfully, Your Honor, I understand that you may disagree with the position that we've taken. No, you don't understand anything other than my question at this point. You don't decide the opinion. Don't get ahead of yourself, counsel. Don't try to interpret my question. Let me finish what I'm saying. Don't worry about what I'm against you. I may be for you. Unlike some judges, it may be just the opposite of what I think about your case. You'll be very careful about it. You might be losing a vote rather than gaining one. So just answer the question, okay? That's just one-on-one for just appellate argument. You don't know what I may be thinking in terms of inclusion. Just try to answer the question. I'm sorry, Your Honor. I was just trying to move on and make the point that even were the court to read the carve-out provision in the manner that you may be suggesting, the fact remains that Counts 2 and 3, Counts 2 alleges a disparate impact theory. Count 3 deals with a non-selection for a temporary duty assignment. Neither of those claims are even arguably within the scope of the class action. So the carve-out simply would not apply to either the second or the third claims. At most, the first, fourth, and fifth claims would survive. And for the various alternative reasons that we've set forth in your brief and with your permission, I'd like to address briefly here, all of those claims are independently barred for various reasons. So with your permission, I'd – There's an independent ground for affirming the district court independent of a settlement agreement. Simply on the preclusive effect that's accorded to the first complaint. Yes, and that is – These are two alternative grounds. That's right. The summary judgment order and the settlement. The settlement came after the summary judgment order, and so in that sense it subsumed it. But either one at this point is sufficient and independent on its own. I'm tempted to give you an opportunity to read for the third time the language that cuts in your direction so that we can even it all up. But I think we've been over and over again, because if I ask you to read that part, then my dear friend and colleague may ask you to read the other part. So I think I better stop while I'm – I'm happy to oblige. I'm not ahead, but I think I better stop where I am. Do you have some further comments? Yes. With your permission, I'd like to briefly – I told you you didn't need to worry about your time, so go ahead and make the comments. Okay. I will start with the exhaustion issues. As I'm sure this court is well aware, in a Title VII case, a plaintiff needs to exhaust her claims administratively before she can bring a federal lawsuit in this court or in the district courts. The plaintiff here does not even contend that she did exhaust any of the claims in her current lawsuit. Rather – That goes to the merits of the suit, doesn't it? No. Exhaustion is a jurisdictional issue. This court has repeatedly held that a failure to exhaust in a Title VII context prides the court of subject matter jurisdiction over the case. So just briefly, I'd like to run through those arguments and explain why we think they are incorrect. Can you do that pretty quickly? Yes, I will be as quick as I can. First, her first argument is that under the doctrine of vicarious exhaustion, she's excused from exhausting her claims in this suit. And that doctrine provides that in a class action, as long as one or more class plaintiffs has exhausted his or her claims, additional plaintiffs can come in and join that suit without having exhausted their claims. Here, we'd just like to respectfully submit that this court should follow its previous holding in Williams v. Henderson, just cited in our brief. There, this court expressly held that vicarious exhaustion is not available to an individual plaintiff who pursues individual claims in a separate suit following the denial of class certification. That opinion is, as plaintiff points out, not published. However, we think that its reading is quite sound and should be followed here. And basically, the rationale is that when you have a class action, you have commonality between the plaintiffs, such that their claims can be tried as a class. And where that situation is present, the claims are so similar that no further conciliatory purpose would be served by requiring each and every one of them to separately exhaust. However, where you don't have a class, that logic evaporates and the doctrine just really is no longer applicable going forward. And again, the filing of the class action lawsuit tolls the statute of limitation for anyone who has joined that lawsuit, so no one loses their ability to exhaust based on joining the class action. You okay now? Have you finished? There were a few other arguments, but if you'd like... I think you can rest on your brief on that. Okay. But if my panel members have any questions about it, that's fine. But otherwise, you don't waive things by not mentioning them in oral arguments. You can rest on your briefs on those. Okay. Very well. We have no further... Okay. We respectfully ask that you affirm the holding of the district court. Thank you very much. Simpson, happy to hear from you in rebuttal. I think the... Excuse me. I think the... Can I just ask about that class action business? Why isn't that very broad language that she read initially sufficient to preclude individual claims in the class? Because it's immediately followed in the same paragraph by the carve-out, and the intention of the carve-out was to preserve her claims. That's right, but if you interpret them both together, isn't that susceptible to the interpretation that both of them read together, preserve her right to participate in the class action, but not to proceed individually? No, Your Honor. I don't think that's a fair interpretation. If she's... You want to read your part of it. I'm trying to say, well, what happens when we combine both parts of it? Well, what happens is, well, first of all, I think that's one reason why it was improper to decide this on a motion to dismiss rather than a motion for summary judgment, because there would have been discovery, and Attorney Scheer would have been deposed, and I would have been deposed, and Attorney Kaufman would have been deposed. There are factual issues here, and we did object to considering this at the motion to dismiss state. What is the factual issue? The intent of the parties. If there's an ambiguity, you are permitted to use parole evidence to determine the intent of the parties. And why do you say this is ambiguous as opposed to not ambiguous? It's just that one side put in some language that it wanted, and the other side put in language that it wanted. That doesn't necessarily mean it's ambiguous. Well, I think the fact that we're having this extended disagreement about what it says... No, we're not disagreeing about what it says. We're trying to figure out what the legal effect of what it says is. That's a question of law, right?  move this into a summary judgment posture. I understand your argument on that. But you agree, I think, and you say in your brief, that the standard of review here for us is de novo. This is a 12B6 motion, right? Reviewing the decision of the district court, yeah. And so we look at this settlement agreement just like the district court looked at it, right? We don't defer to the district court's interpretation. We look at it ourselves, right? If it's non-ambiguous, yes. Okay. And so why do you say it's ambiguous? I don't think it is. I think it says exactly... I don't either. I think it says exactly... So we're in agreement. Okay. So the disagreement, your disagreement with the district court, is the district court's legal interpretation of a non-ambiguous document. I believe that's correct, Your Honor. Okay. Go ahead. But to the extent it is deemed or believed to be ambiguous... Well, I agree with you. I don't think it's ambiguous. Okay. Answer Judge Wilkerson's question. It's a good question. I'm sorry. That was the question. When you put them together, why do we come to the conclusion legally that you suggest we should? Because it expressly refers to the Valerino action, does not refer to it as a class action, and it says this does not affect the plaintiff's participation in. Now, if her individual claims are dismissed by this document, that affects her participation in that case because she can't be a class plaintiff. Preliminarily, I agree with Judge Davis. The fact that parties offer differing interpretations of a particular contract term doesn't make it ambiguous because by definition of the lawsuit, every lawsuit for a breach of contract is going to likely involve different interpretations of the legal term, and that can't be enough to establish ambiguity. But my concern about it was that the part that your opposing counsel really wanted to read, get to, seems squarely aimed at individual claims. Then if the individual claims are dismissed, she cannot be a plaintiff in the class action. That affects her participation. It affects her participation individually, and as a matter of law, she cannot be a class plaintiff. You mean she can't be a named class representative, but she can certainly participate on class claims. For example, she could testify to her individual experience in support of a pattern in practice. Yes. So I'm not sure I follow you when you say the mere release of her individual claims forecloses her participation. And by the way, that word is a pretty powerful word, it seems to me, in the context of our discussion. Participant covers a lot of ground. But it certainly... You can't give a named plaintiff representative to be a participant in a class action. I think that's correct, Your Honor, but it certainly affects the way she participates. Right, the language is not participate, the language shall have no effect on it, correct? Exactly. I think your argument basically is that if that's the case, if it ab initio, after signing that, had the impact that counsel urges that all individual claims are gone, before there was an issue on class certification, she would be out because she would have no individual claim. That's your point. Exactly, and the case went on for a year before they did anything. And they didn't do anything until the class action, the class certification was not granted. And it is not correct to say that Judge Lee gave the parties permission to file a new lawsuit. He ordered them to file a complaint in a new matter that he administratively established. And as I pointed out, there's 120 docket entries that precede that order. Of course, none of this even addresses the district court's first ground of decision, which is the race to your cotta ground, and it stands independently of this whole settlement agreement. There were two alternate grounds, and the district court put the race to your cotta ground first, but I'm going to ask my colleagues if they have any further questions on any of this. Of course, that preclusive effect would only be to the extent of the summary judgment granted in that first case on those claims. Yes, and actually, I saw this this morning, so I haven't had a chance to even submit a 28J letter. There's a decision from this court in December called Ex Rel May, the Puritan Pride, I believe it is, that says the race to your cotta preclusive effect when there's a settlement is based upon the settlement, certainly not the complaint. It doesn't address the existence of a motion of an order granting partial summary judgment. But so I don't think race to your cotta is a sound ground to base the decision on for all of the reasons we've said. It wasn't an appropriate case to file this other case in. And the facts are different. Judge Davis, you asked about, well, it doesn't matter what label you give it. That's absolutely correct, but the facts are diametrically different. This case that we're arguing about now is about if you file an EEO claim in the Marshals Service, forget about being promoted, ever. Because the way the promotion process is set up, you can't get promoted. Because it's a small group, the people who are doing the promotions know about your EEO claims, and you get retaliated against. And it's an incredible problem. And the next time that happens to your client, she can file a lawsuit eventually, right? Absolutely, Your Honor. Has she done so yet, by the way? Not yet. Mainly because she gave up seeking promotions for a long time. Anything after 2010 is fair game. It wouldn't be covered by the prior complaint. Absolutely not. Or she might be able to go back and litigate this case as she wants, as you urged us to do, correct? She should be allowed to because she's got damages from this case, and it was not intended that this settlement agreement would eliminate these claims. Thank you, Your Honors. Any further questions? No. Thank you. Thank you. We'd like to come down and greet both of you, and then we'll take a brief recess.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Andre M. Davis